OPINION
Defendant-appellant Jeffrey Cooper appeals from his conviction and sentence, following a plea of no contest, upon one count of Possession of Cocaine. Cooper contends that the trial court erred by denying his motion to suppress evidence found upon, and seized from, his person, and to suppress statements made by him. He contends that although the evidence was obtained as the result of a search of his person incident to arrest, the arresting police officer was without probable cause to make the arrest. We conclude, based upon our review of the record, that the officer had probable cause to arrest Cooper for Criminal Trespassing.
With respect to Cooper's statements to the police, the record does not reflect that any statements made were the result of custodial interrogation following his arrest and preceding the administration of Miranda warnings.
Because we conclude that the trial court properly denied Cooper's motion to suppress, the judgment of the trial court isAffirmed.
 I
Dayton police officer John Beall saw Cooper standing right by the front porch of a vacant house, owned by the City of Dayton, which was boarded up and posted with "No Trespassing" signs. It was about one o'clock in the morning. Cooper was "standing in the yard, right by the front porch." There were at least three "No Trespassing" signs on the front of the house, and there were at least two signs on the side of the house. Beall testified concerning these signs, as follows:
 Q. Officer Beall, what color is the stenciling that was, that comprised the notice?
A. It's red.
 Q. And what color is the background upon which the stenciling is applied?
A. White.
Q. The whole house is white?
A. Yes.
 Q. Did you have any difficulty distinguishing or contrasting the two colors?
A. No.
 Q. So, would you have any difficulty reading the notice?
A. No.
 Q. How would — how far would he have been standing from the notice, or I guess I should say from the wall of the house — wall of the house, since the stenciling was on the house when you saw him?
A. He's, he's probably three, three to four feet away.
* * * *
 Q. So, he would have been three or four feet away from the sign that was on the house?
A. Yes.
 Q. Okay. Now, in the pictures that both myself and defense counsel have presented you with, you can see the stenciling in those pictures. Right?
A. Yes.
 Q. And does it appear to you that those pictures were taken from a distance of three or four feet?
 A. No. This picture here is probably taken from 25 feet.
 Q. So, you could see the stenciling from 25 feet in that picture?
A. Yes.
Q. And what height are the notices?
 A. Appears that most of them are about eye level. Six to seven feet. Some of `em are, well, this one here is about four feet up.
 Q. Okay. Now, defense counsel asked you if the notices were small. And you replied that they weren't. Is it safe as to say that they're big enough to be seen from 25 feet?
MR. MONTA [representing Cooper]: I'm going to object.
THE COURT: Overruled.
You may answer on the basis of your observations.
 THE WITNESS: It would depend on somebody's eyesight. I could read it from 25 feet. The letters are probably an inch and a half in height.
Beall approached Cooper and asked him what he was doing there. Cooper said that he was just waiting on a friend. Beall asked Cooper for identification, and then arrested him for Criminal Trespassing. Beall performed a search incident to the arrest, and recovered a three-inch glass crack pipe from Cooper's right front coat pocket. The crack pipe had some visible residue, which Beall field tested with a cobalt reagent. The test was positive for cocaine. Beall added a charge of Possession of Cocaine.
Beall did not advise Cooper of his rights under Miranda v.Arizona (1966), 384 U.S. 436, when he arrested Cooper. When asked whether Cooper made any statements at that time, Beall responded: "None that I recall."
Cooper moved to suppress the evidence obtained from his person, and any statements he made. Following a hearing, his motion to suppress was denied. Thereafter, he pled no contest to Possession of Cocaine, was found guilty, and was sentenced accordingly. From his conviction and sentence, Cooper appeals.
 II
Cooper's sole assignment of error is as follows:
 WHETHER THE COURT ERRED WHEN IT OVERRULED HIS MOTION TO SUPPRESS EVIDENCE, WHICH VIOLATED DEFENDANT'S CONSTITUTIONAL RIGHT TO DUE PROCESS UNDER THE FOURTH, FIFTH AND FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO STATE CONSTITUTION.
Cooper primarily argues in this appeal that Beall was without probable cause to arrest him for Criminal Trespassing. Therefore, Cooper argues, the evidence obtained as the result of the search incident to that arrest should be suppressed. Cooper points out that the offense of Criminal Trespass, as proscribed by R.C.2911.21(A), requires either that the accused knowingly entered or remained on the land or premises of another, without privilege to do so, or that the accused recklessly entered or remained on the land or premises of another, as to which notice against unauthorized access or presence is given by posting in a manner reasonably calculated to come to the attention of potential intruders. Cooper argues that Beall was without probable cause to believe that Cooper either knew that he was on premises owned by the City of Dayton, without privilege to do so, or that he recklessly entered or remained upon the premises, without privilege to do so, as to which notice against unauthorized access or presence was given by posting in a manner reasonably calculated to come to the attention of potential intruders.
In making an arrest, a police officer is only required to have probable cause to believe that the person being arrested has committed an offense; the officer is not required to have proof beyond a reasonable doubt. State v. Williams (November 21, 1997), Montgomery App. 16306, unreported, at 2.
In her decision denying the motion to suppress, the trial judge found Beall's testimony to be credible. Given Beall's testimony concerning the multiple "No Trespassing" signs posted on the front of the property, at eye level, in inch-and-a-half lettering, we conclude that Beall had probable cause to believe that Cooper knew he was on the premises on another, without privilege to do so, or, at a minimum, that Cooper was reckless in standing and remaining three to four feet in front of a boarded-up house, without noticing that it was posted with multiple "No Trespassing" signs.
Cooper argues further that Beall indicated, in his testimony, that he misunderstood Criminal Trespassing to be a strict liability offense, thereby undermining his probable cause determination. We have reviewed Beall's testimony, and it is not clear to us that he misunderstood Criminal Trespassing to be a strict liability offense. In the context of cross-examination, it appears equally likely that Beall was rejecting Cooper's counsel's suggestion that additional criminal activity is required to make out the offense of Criminal Trespassing, besides merely entering or remaining on premises of another without privilege to do so. Beall may well have been indicating, in response to this suggestion, that it is not necessary for the trespasser to be engaged in some other criminal activity to be guilty of Criminal Trespass, which is a correct statement of law.
Because, in our view, the record fails to portray that Beall was laboring under a misconception that Criminal Trespass is a strict liability offense, we need not consider whether that would have precluded him from making a lawful arrest, where the facts and circumstances known to him would have justified a reasonable officer in finding probable cause to believe that a Criminal Trespass had occurred.
Because we conclude that Beall had probable cause to make the arrest, it follows that the search was incident to a lawful arrest, and the trial court did not err in denying Cooper's motion to suppress the evidence obtained as a result.
Cooper also claims that the trial court erred in denying his motion to suppress statements. Although Beall testified that he could not recall Cooper having made any statements following his arrest, Cooper argues that the trial court referred to statements when it made the following observation in its decision denying his motion to suppress, concerning its evaluation of the relative credibility of Beall and Cooper:
 Defendant Jeffrey Cooper testified and contradicted Officer Beall's testimony as follows. Defendant informed Officer Beall that he was not aware of the "NO TRESPASSING" signs, and the coat and crack pipe did not belong to him. Upon cross examination, the Defendant wavered back and forth on the fact of whether the push-rod and brillo pad found in his pants' pocket belonged to him or his friend, as well as other matters.
* * * *
 After viewing the witnesses, hearing their testimony and observing their demeanor, the Court finds the testimony of Officer Beall to be more credible than that of Defendant Jeffrey Cooper.
Cooper testified at the suppression hearing after being specifically advised by the trial court that anything he said could be used against him at trial. Cooper's testimony on direct examination included the following:
Q. What do you remember, Jeffrey?
 A. I remember after I was patted down, and the officer found the crack pipe, then I remembered that I was handcuffed and asked to get, to get in the police cruiser. That is what I remember.
 And when I looked at the report they gave me, the arrest report, I looked at that. And I said, when I seen how that was, I said there was something strange about that. That is not the exact way that it went.
Q. Okay. And was the crack pipe yours?
 A. No. I explained to the police from the very beginning that it was not my coat. I explained to the police that I was waiting on Mr. Punchy Crowler. I explained to the police why I was waiting on him, that he had some stuff. He had some stuff, that he had some stuff inside his coat to sell.
 I showed him to the police who it was when he came to the door. I said that's the guy waiting. That was the guy that picked me up. He mentioned, he was trying to sell, whatever it was. Evidently, didn't sell it, because he got out. And that is who I got the coat from. I told the police about everything, not just about that. That is why I wanted this hearing.
The above-quoted direct testimony of Cooper is the only evidence we can find in the record concerning a statement that Cooper may have made to Beall about the coat and its contents. On cross-examination, he was asked about the coat and its contents, but he was not asked about any statement that he may have made to Beall. We have reviewed this testimony, and we can understand why the trial court found Cooper to be less credible than Beall.
Although Cooper testified concerning a statement he made to Beall concerning the coat and its contents, and the decision of the trial court reflects this, there is nothing in Cooper's testimony to indicate that this statement was the result of custodial interrogation. To the contrary, it appears from Cooper's testimony that he volunteered an explanation concerning the crack pipe and other paraphernalia that had been found on his person.
In short, there is nothing in the record before us that would have required the trial court to find that Cooper was subjected to custodial interrogation following his arrest. Statements made by a defendant without first having been administered a Miranda
warning are only subject to suppression when they are the result of custodial interrogation. Because there is nothing in this record to support a conclusion that any statements Cooper may have made to Beall were the result of custodial interrogation, the trial court properly denied his motion to suppress the statements he made to the police.
Cooper's sole assignment of error is overruled.
 III
Cooper's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
BROGAN and WOLFF, JJ., concur.